952 F.2d 403
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Elizabeth CARROLL, Plaintiff-Appellant,
v.
The METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON
COUNTY, Defendant-Appellee.
 No. 91-5749.
 United States Court of Appeals, Sixth Circuit.
 Jan. 10, 1992.
 
 Before DAVID A. NELSON and SUHRHEINRICH, Circuit Judges, and CELEBREZZE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This action arises under the Individuals With Disabilities Education Act, 20 U.S.C. §§ 1400 et seq. ("the Education Act"). The plaintiff, a child named Elizabeth Carroll, is a victim of Rett Syndrome. Through her parents, she requested an administrative hearing with respect to her school placement and other matters. A state hearing officer entered a comprehensive order adopting many of the positions argued by Elizabeth's parents, but the defendant school system (the Metropolitan Government of Nashville and Davidson County, Tennessee) did not fully implement the order. Elizabeth brought an enforcement suit in federal court, and the Metropolitan Government filed a separate action for review of the order. The two cases were subsequently consolidated.
 
 
 2
 The district court held a hearing at which four witnesses testified for the Metropolitan Government. Elizabeth's counsel had said he wished to put on two witnesses, but before they could take the stand the court announced that it was rejecting the hearing officer's factual findings, reversing the administrative decision, and ordering that Elizabeth be placed in a school other than the one specified by the hearing officer.
 
 
 3
 The plaintiff makes two main contentions on appeal: (1) that the district court erred in reversing various portions of the administrative order that were not being challenged by the Metropolitan Government, and (2) that the court improperly denied Elizabeth and her parents an opportunity to be heard on the school placement issue. The plaintiff's contentions have some merit, in our view, and we shall remand the case for further proceedings.
 
 
 4
 * Elizabeth was born on July 24, 1984. She is severely handicapped by Rett Syndrome, a degenerative condition that occurs only in females. Children with this disease have profound mental retardation and physical handicaps.
 
 
 5
 In april of 1988 a multidisciplinary team (or "M-Team") that was responsible for determining Elizabeth's Individual Education Program ("IEP") decided that Elizabeth should receive one-on-one instruction and should be placed in a "self-contained" school class. (A self-contained class is either a class conducted in an enclosed classroom with walls and a door, i.e., a typical classroom, or a class taught by a special education teacher with assistants who spend most of their day with the same group of students.)
 
 
 6
 A year later the M-Team determined that extended services would be required during the summer of 1989, but these services were not provided by the school system. Elizabeth's parents eventually obtained comparable services through the Department of Mental Health and Retardation.
 
 
 7
 For the 1989-90 school year, the IEP called for language consultation and occupational therapy. No such services were provided by the school district. The hearing officer found that the school system simply decided not to follow the IEP for that school year.
 
 
 8
 For the summer of 1990 the school system proposed a placement and educational program the appropriateness of which, according to the hearing officer, was not supported by any evidence. Without the assistance of the school system, Elizabeth's parents placed her in an integrated setting with a special education teacher paid by the Department of Mental Health.
 
 
 9
 In August of 1990 the school system decided to assign Elizabeth to an institution known as the Hickman School. Shortly after this decision was announced a Tennessee Department of Education hearing officer convened the administrative hearing referred to above. Elizabeth's parents objected to the Hickman School placement and argued that the school system had not complied with Elizabeth's IEP and had not provided the required related services. They sought to have Elizabeth placed in a regular kindergarten class with a full-time aide under the supervision of a special education teacher. The parents also sought related services, including music therapy.
 
 
 10
 The hearing officer found that Elizabeth had benefited from being integrated into a regular educational program with individualized instruction. He also found that she had benefited from music therapy. Citing Bd. of Education v. Rowley, 458 U.S. 176 (1982), he held that the school system had violated the Education Act by failing to follow Elizabeth's IEP and by modifying the IEP unilaterally without M-Team input and approval. The hearing officer ordered that an M-Team meet within 15 days to develop an IEP that included a plan for a self-contained class and one-on-one instruction under the supervision of a certified, experienced special education teacher. He also ordered that the IEP should provide for music therapy by a fully qualified registered music therapist. The hearing officer directed that Elizabeth be placed at a school in the zone where she lives, the H.G. Hill School.
 
 
 11
 In the ensuing district court proceedings, the school system took the position that Elizabeth could not receive an appropriate education at the H.G. Hill School. The school system also challenged the hearing officer's determination that Elizabeth should receive music therapy from a certified music therapist.
 
 
 12
 The district court held an evidentiary hearing on the matter in January of 1991. It was agreed that the school system would present its case first, but the court was advised at the outset that Elizabeth wished to put on two witnesses.
 
 
 13
 The school system's first witness was Margaret Horsnell, a special education teacher who had been involved with Elizabeth for approximately two years. Ms. Horsnell described the child's physical motor deficits, which made it difficult for other people to ascertain what Elizabeth could comprehend. Although Elizabeth was capable of a degree of non-verbal communication, Ms. Horsnell told the court that the child had no meaningful verbal communication skills and often used the same phrase to mean different things. Elizabeth was not toilet-trained, she had trouble grasping things, and her ability to feed herself was extremely limited. Her ability to go up and down stairs was also limited. Ms. Hornsell explained that Elizabeth used a sensory motor-type swing to help improve her balance and enable her to move around. The swing was described as being a "very large piece of equipment."
 
 
 14
 Ms. Hornsell expressed the opinion that the H.G. Hill School would not be appropriate for Elizabeth for two reasons: the school had no self-contained kindergarten classroom, and the teachers at this school did not have the skills needed to work with Elizabeth successfully. Ms. Hornsell went on to describe the Una School, which she indicated would be a much better placement for Elizabeth. On cross-examination, Ms. Hornsell stated that the school system had no objection to Elizabeth being integrated into a regular kindergarten class at the Una School.
 
 
 15
 Dr. Steven Baum, the principal at H.G. Hill, also testified. He too commented on the lack of a self-contained kindergarten classroom, and he noted that the school's size and its overcrowded condition would constitute drawbacks from Elizabeth's standpoint. He also indicated that she would derive little educational benefit from the type of instruction provided at this school. Her special equipment would pose a problem there, he noted, because of space limitations.
 
 
 16
 On cross-examination, Dr. Baum acknowledged that the H.G. Hill School had one room designated for students with multiple handicaps. This room was under the direction of Ms. Lorilei Kopansky, who took the stand next. She indicated that she could teach only moderately retarded children, not having the background necessary to teach severely or profoundly retarded children. She explained that her classroom was not "self-contained;" it was more a "resource-type" classroom. Her students had their own homerooms located throughout the school, and they came to her only for special needs.
 
 
 17
 Ms. Kopansky testified that she currently taught seven students, all of whom had physical handicaps only; there were no mentally retarded children in her class. Her curriculum was academically oriented and would not address the needs of a severely retarded child. Ms. Kopansky made it clear that she did not think her class at H.G. Hill would be appropriate for Elizabeth.
 
 
 18
 Ms. Pamela Hadley, who taught kindergarten through fourth grade at the Una School, proved to be the final witness. She testified that Una had closed classrooms throughout and that all classrooms were on the same floor. There was a downstairs cafeteria that could be reached by an elevator. Ms. Hadley's class was located in a kindergarten wing, which allowed for integration of that class into the regular kindergarten program.
 
 
 19
 With the help of three assistants, Ms. Hadley testified she taught six children ranging in age from four to eight. These students were described as being both physically and mentally handicapped; one of them had Rett Syndrome.
 
 
 20
 Ms. Hadley told the court that she helped her students with their motor skills, their communication skills, and with feeding, toilet training, and social integration. The children at the Una school have occupational therapy equipment somewhat similar to Elizabeth's, and Ms. Hadley indicated that there was adequate space to accommodate Elizabeth's equipment. Ms. Hadley testified further that her students had been "mainstreaming" into regular classes and that they received weekly music training in another kindergarten class.
 
 
 21
 Ms. Hadley stated that in her professional opinion, Una was an appropriate school for Elizabeth. She further said that she had reviewed Elizabeth's IEP and thought that this plan and the Una program would address Elizabeth's needs.
 
 
 22
 After hearing the testimony of Ms. Hadley, the district court asked Elizabeth's attorney what was wrong with this school for Elizabeth. The attorney replied that he and his clients had not known about the program before that morning. He started to say that they would have been happy to consider it, at which point the court broke in and made the following statement: "All right. It [the Una School program] will be ordered. The hearing officer's previous findings are rejected by this Court. This child will not receive one on one, this child will not receive placement at Hill Elementary. The child will be placed at Una under this lady's [Ms. Hadley's] direction and we will go from there and see what happens."
 
 
 23
 The attorney for the school system reminded the court that the school system was not contesting the hearing officer's direction to provide one-on-one instruction, but the court replied that society was not obligated to provide one-on-one instruction. The attorney then noted that music therapy (unlike one-on-one instruction) was an issue, and the court ruled as follows: "No music therapy. This child is going to get music on Thursday with the rest of the children. This is self-serving testimony by a musical therapist that wants to provide himself with a job. That is again not a responsibility of society." The defendant's attorney was instructed to prepare the order, and court was recessed. The court subsequently entered a brief order reversing the decision of the hearing officer, directing that Elizabeth be placed at the Una School under Ms. Hadley's instruction without the assistance of a one-to-one aide, and ordering that Elizabeth not receive music therapy. This appeal followed.
 
 II
 
 24
 "This court has determined that Rowley requires a de novo review [of the state administrative proceedings] but that the district court should give due weight to [such] proceedings in reaching its decision." Doe by and through Doe v. Smith, 879 F.2d 1340, 1343 (6th Cir.1989), cert. denied, 493 U.S. 1025 (1990). This court has also recognized that "federal courts are 'generalists with no expertise in educational needs of handicapped children' and will benefit from the fact finding of a state agency with expertise in the field." Id., quoting Crocker v. Tennessee Secondary School Athletic Assoc., 873 F.2d 933, 935 (6th Cir.1984).
 
 
 25
 In the case at bar, Elizabeth contends that the district court erred in reversing the hearing officer's decision with respect to the alleged procedural violations. We agree. The hearing officer's findings of procedural violations were supported by the administrative record and were not challenged before the district court.
 
 
 26
 As to music therapy, the hearing officer decided that Elizabeth should receive such therapy from a fully qualified and registered music therapist. The hearing officer's decision on this question was made on the assumption that Elizabeth would be placed at the H.G. Hill School, and the hearing officer had no occasion to consider the music program available at the Una School. Because it will be necessary for the district court to revisit the school placement issue, for reasons explained in the next section of this opinion, we invite the court to reconsider the music therapy issue in that context.
 
 
 27
 Like the question of music therapy, the question of one-on-one instruction is probably intertwined with the school placement question. Accordingly, we invite the district court to reexamine one-on-one instruction in the course of its deliberations on the placement question.
 
 III
 
 28
 Elizabeth's counsel contends on appeal that he wanted to offer evidence in favor of placing Elizabeth at the H.G. Hill School and was denied an opportunity to do so. The district court knew at the outset that the plaintiff's lawyer had two witnesses to present, and although the case put on by the school system was a very persuasive one as far as the placement issue was concerned, we find it surprising that the court should have announced its decision without inviting Elizabeth's lawyer to put his witnesses on the stand. It is also surprising that the lawyer should not have insisted on his right to do so, but the lawyer does seem to have been cut off pretty peremptorily. To make sure that no injustice has been done here, we think it best to remand the matter for completion of the hearing and reconsideration in the light of all the evidence. See 20 U.S.C. § 1415(e)(2) (the district court "shall hear additional evidence at the request of a party"). Our decision does not, of course, affect the district court's authority to enter such orders as may be appropriate pendente lite, nor does it detract in any way from the ongoing responsibilities of the M-Team.
 
 
 29
 The order appealed from is VACATED, and the case is REMANDED for further proceedings not inconsistent with this opinion.